Pennsylvania R. Co. et al. v. City of Louisville et al.

City of Louisville et al. v. Illinois Cent. R. Co. et al.

March 14, 1939.

B. H. Farnsley, Special Judge.

WILLIAM W. CRAWFORD and CRAWFORD, MIDDLETON, MILNER & SEELBACH for appellants Pennsylvania R. Co. and Louisville Bridge & Terminal Ry. Co.

HAL O. WILLIAMS, LAWRENCE S. POSTON, SQUIRE R. OGDEN and GORDON, LAURENT, OGDEN & GALPHIN for City of Louisville and others.

TRABUE, DOOLAN, HELM & HELM for Illinois Cent. R. Co. and Chicago, St. Louis & New Orleans R. Co.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

The City of Louisville, Kentucky, and Roy W. Burks, Director of Works of the City of Louisville, filed suit under the Declaratory Judgment Act, sections 639a—1 to 639a—12, inclusive, of the Civil Code of Practice, against the Pennsylvania Railroad Company, the Louisville Bridge & Terminal Company, a subsidiary of the Pennsylvania Railroad Company, the Illinois Central Railroad Company, the Chicago, St. Louis & New Orleans Railroad Company, a subsidiary of the Illinois Central Railroad Company, and the Louisville Railway Company, seeking, among other things, to have performed the obligations incurred by these railway companies in a contract entered into between them and the City of Louisville through the Director of Works of the City on July 13, 1931. This contract provided for the elimination of several grade crossings in the City of Louisville by the elevation of certain railway tracks. The contract was executed by the Director of Works pursuant to section 2839a-1 of the Statutes. The Louisville Railway Company filed an answer admitting the allegations of the petition and affirmatively setting forth a modification of its obligation under the contract to contribute to the City a part of the expenses to be incurred in eliminating grade crossings at certain streets. The Louisville Railway Company, therefore, is not a party to the proceedings in this Court.

The Illinois Central Railroad Company and the Chicago, St. Louis & New Orleans Railway Company filed a demurrer to the petition. In sustaining this demurrer in his judgment the trial judge pointed out that these railway companies had not refused to perform the contract. The petition as to them was dismissed. The City is appealing from that part of the judgment. We think the trial court properly sustained the demurrer as to these two railway companies, especially in view of the fact that the judgment recites that:

"Jurisdiction is retained by the Court over this cause for the purpose of deciding any controversies or differences that may arise between or among the parties hereto, or any of them, with respect to the performance of the work as set forth in said contract or as may be set forth in any modified, changed or altered contract."

The remainder of this opinion, therefore, will be devoted to the controversy between the Pennsylvania Railroad Company and its subsidiary and the City.

The issues were joined between the **Pennsylvania** and the City, proof was heard and the judgment hereinafter discussed was entered. The Pennsylvania is appealing from that part of the judgment upholding the contract of July 13, 1931, as a binding contract, and adjudging that (1) it prepare the plans and specifications for the grade crossing elimination project in sufficient detail to enable contractors to bid upon construction of the project; (2) it submit those plans to the other parties to the contract in accordance with its terms; (3) it advertise for bids for the work and accept the lowest and best bid upon the approval of the plans by the other parties to the contract; (4) the part of the judgment relating to advertising for bids not become effective until further order of the court in the event Maple Street is not closed by the city by the time given the Pennsylvania to prepare the plans and specifications; (5) in the event the plans and specifications are not approved by one or more of the parties to whom they are submitted, upon motion of any party to the contract the court will hear evidence as to the reasonableness or unreasonableness of the failure on the part of the party or parties to approve the plans and specifications; and (6):

> "Anything herein contained to the contrary notwithstanding, the performance of any act enjoined upon any party to be performed need not be commenced or done prior to October 27, 1938, during which time the parties hereto, if they so desire, shall have an opportunity to amend, change or alter the aforesaid contract, and if said contract is amended, changed or altered by the parties hereto, then upon motion of any party hereto, the Court will change, alter or modify this decree, or set aside this decree and enter another decree in order that the decree shall conform to any such changed, altered or modified contract made by the parties."

The Pennsylvania's chief grounds for reversal are (1) the contract in question is not of the kind that a court of equity will specifically enforce; (2) the present financial condition of the Pennsylvania is such that to force it to perform the contract at the present time would subject it to undue hardship; (3) the closing of Maple Street by the City is a condition precedent to the performance by the Pennsylvania of its obligations under the contract; and (4) the evidence shows that

the contract of July 13, 1931, has been changed by the parties to the original agreement, which agreement is no longer in effect.

As a matter of convenience we will discuss these grounds in reverse order. We do not deem it necessary to enter into an extended discussion of the provisions of the contract, or the evidence relating thereto, or such modifications as may have been agreed upon by the parties, including the changed route eastward from 14th Street into 10th Street Station and the transactions between the parties relating thereto. That there was an agreement and understanding between the parties to the contract that the Pennsylvania's tracks from its bridge over the Ohio River south along 14th Street to Kentucky Street and then east into 10th Street Station were to be so reconstructed and elevated as to eliminate grade crossings is beyond dispute. Nor is there doubt that the project will be beneficial to both the public and the Pennsylvania. Furthermore, it is clear that there was a meeting of the minds of all the parties to the contract as to the manner in which this work was to be done, and also as to the type of construction contemplated, as indicated by the preliminary plans and specifications. It is true that the detailed plans and specifications upon which bids were to be made by contractors were not prepared at the time the contract was entered into, but the contract set out the manner in which this work was to be done. The record reveals that the parties agreed upon a new and cheaper route from 14th Street eastward into 10th Street Station, and obtained some of the right of ways for the changed route, and that some phases of the preliminary plans and specifications were changed, but there was no departure at any time from the original purpose agreed upon by the parties to the contract to the effect that the Pennsylvania's tracks from its bridge over the Ohio River to south of Broadway along 14th Street and then eastward into 10th Street Station were to be so relocated and rebuilt as to eliminate grade crossings. We think, therefore, that, in so far as the Pennsylvania's fourth contention is concerned, the part of the trial court's judgment heretofore quoted as to the modification of the contract furnishes a fair and proper means for the parties to revise the original contract relative to the changed route into the station and the changes made in the preliminary plans and specifications.

There is some evidence that the parties agreed that the City should delay in closing Maple Street in order to facilitate the obtaining of right of ways. The Pennsylvania's fear that it may be called upon to expend $25,000 to $50,000 in the preparation of detailed plans and specifications and then have them turned down by the City merits little consideration, in view of the fact that it is the City who is urging that the grade crossing contract be carried out. Furthermore, if the parties had not agreed to proceed under section 2839a-1 of the Statutes and the Company was faced with the elimination of the grade crossings under section 2839a-2, there can be but little doubt that its opportunity to have the grade crossing elimination work done in accordance with its own views would be considerably more restricted. It is our conclusion that the closing of Maple Street was equitably cared for in the trial court's judgment.

We do not think that there is anything alarming in the evidence presented by the Pennsylvania as to its financial condition. Its counsel states in his brief that it has nearly $3,000,000,000 worth of property engaged in the railroad business. Its capital and surplus exceed by more than $1,000,000,000 its obligations of every nature. The grade crossing elimination project will cost approximately $3,000,000. The Pennsylvania's part of this cost will amount to something in excess of two-thirds of this sum, or a sum roughly equal to its operating expenses for two days. While it is argued by the Pennsylvania that construction costs are not paid from capital and surplus, and that business and earnings are necessary to take care of liabilities such as those incurred under the contract in question, the Company knew all of this when it entered into the contract in 1931. Likewise it knew that in all probability there would be upward and downward trends in its business after that date, as there had been before. Doubtless keen foresight and good management on the part of its officers have played no small part in making this Company the largest railway enterprise in the United States, and have helped also in placing the Company in the enviable position where it can boast that it has paid dividends since 1847.

The Pennsylvania was probably still feeling the effects of the crash of 1929 when it entered into the contract of 1931. It has enjoyed the fruits of some

reasonably good years since that date, but is now insisting that it should be relieved of the carrying out of the contract, under which it frankly admits its obligations, largely because a downward trend in business set in during the fall of 1937. It would be easy to anticipate what would happen if this Court should grant relief to a party to a contract under which it admitted its obligations, for the reason that it did not have as much cash on hand when the time for performance came as it had at the time it entered into the contract.

In the case of Kansas City v. Kansas City Terminal Railway Company, 324 Mo. 882, 25 S. W. (2d) 1055, 1069, decided in 1930, the court required the performance of a contract under which the Kansas City Terminal Railway Company was to build a viaduct at its own expense. In commenting upon the plea of the Railway Company that it should not be compelled to perform the contract because it was financially embarrassed, the court said:

"The estimated cost of the viaduct is $346,000. If this amount were apportioned equally among the twelve trunk line railroad companies who own the stock of the terminal railway company, each would be required to pay less than $30,000. But aside from that the defense is novel. In its final analysis it is simply this: The defendant ought not to be compelled to perform the contract, although the promise of such performance constituted the consideration in part which it gave for its railroad, for these reasons: That it is now financially embarrassed; that it may find it necessary to borrow money; and that in the event it does have to borrow money it will first have to show the Interstate Commerce Commission that it is necessary for it to do so. Neither insolvency nor the difficulty attendant upon the borrowing of money with which to perform constitutes a defense to an action to enforce a contract, unless made so by the contract itself. It is not a defense in this case. Nor does the claim that if the defendant be required to discharge a valid obligation entered into by it for the purpose of acquiring in part its railroad property, such requirements will burden interstate commerce in violation of the commerce clause of the Constitution of the United States, merit serious consideration. De-

fendant's contentions under this head are disallowed.''

Lastly, we turn to the Pennsylvania's contention that the contract is not the kind that a court of equity will specifically enforce. While we think this contention has more merit than those heretofore discussed, we have no hesitancy in saying we think the contract is of the kind that can be specifically enforced. The Pennsylvania cites the case of McKnight v. Broadway Investment Company, 147 Ky. 535, 145 S. W. 377, wherein it was pointed out that a contract required to be specifically performed must be reasonably certain as to its subject matter, its stipulations, its purposes, its parties and the circumstances under which it was made. 26 American & English Encyclopedia of Law, 32. It was pointed out in the McKnight case, however, that specific performance of the contract in question would not be required, because it was apparent that there had been no meeting of the minds of the parties. The contract in the case at bar meets all of the conditions mentioned in the McKnight case.

The Pennsylvania cites also the case of Tennessee Electric Power Company v. White County, 6 Cir., 52 F. (2d) 1065, decided in 1931. In an opinion delivered by Judge Moorman, the Circuit Court of Appeals, Sixth District, held that a contract requiring the Power Company to maintain bridges raised or constructed by it in consideration for permission to raise a dam was not specifically enforceable by the county, but it was pointed out also that the remedy at law was adequate. As pointed out above, we have before us a situation where the Railway Company is not denying its obligations under the contract, but in effect is asking that it not be directed to perform the contract ''at the present time.'' Obviously the City has no adequate remedy at law.

In the case of Schmidtz v. Louisville & Nashville Railroad Company, 101 Ky. 441, 41 S. W. 1015, 19 Ky. Law Rep. 666, 38 L. R. A. 809, this Court directed that the Railway Company operate a division of the Cumberland & Ohio Railway Company in accordance with the terms of a 30 year lease. In that case the Louisville & Nashville Railway Company contended that it should not be compelled to perform specifically the contract because it involved the operation of a railroad over a considerable period of time and because of the require-

ment of special skill and technical knowledge in so doing. In the Schmidtz case the case of Texas & P. Railway Company v. Marshall, 136 U. S. 393, 406, 10 S. Ct. 846, 34 L. Ed. 385 (which case has been stressed by counsel for the Pennsylvania) was commented upon but not followed.

The cases of Chesapeake & Ohio Railway Company v. City of Dayton, 177 Ky. 502, 197 S. W. 969, and Chesapeake & Ohio Railway Company v. City of Bellevue, 239 Ky. 61, 38 S. W. (2d) 943, involved circumstances somewhat similar to those in the case at bar. In the Dayton case, in which the case was treated as one arising purely in contract, the Court affirmed a judgment of the trial court directing that the Chesapeake & Ohio erect an overhead bridge where it had agreed in an ordinance contract to conform a street to the grade of its track. In constructing the track the Chesapeake & Ohio had put it out of its power to carry out this provision of the contract by making a deep cut along the street. It was pointed out in the Bellevue case, supra, that it was not claimed by the city that the Chesapeake & Ohio was under contractual obligation to construct an underpass. This Court affirmed the judgment of the lower court, however, compelling the Chesapeake & Ohio to build an underpass, since the evidence clearly indicated that the building of an underpass was the only practical way of restoring Pendleton Avenue so as to make it safe and useable for public travel.

In commenting upon the Kansas City Railway Company's contention that specific performance is a discretionary remedy, and should not be applied under the facts in that case, the court said in the Kansas City case, supra:

"It cannot be said that the contract which plaintiff seeks to have specifically performed is grossly unfair, or that defendant in performing it will sustain a hardship out of proportion to the value of the performance to plaintiff. Railroad companies, while they render a public service, are organized and operated for private gain. One of them cannot expect to be allowed to bisect a great city, crossing its streets and thoroughfares, with its lines of railroad without its constructing at its own expense safe and suitable crossings. The requirement that it do so is an ordinary incident of

railroaa ownership and operation. The fact that defendant would have escaped a part of the expense of constructing a viaduct at Oak street owing to the contour of the ground at that place, had it not voluntarily contracted to assume all, does not render the performance of its contract a hardship. * * *

"On the whole we conclude that plaintiff is entitled to the relief it asks. Accordingly, the judgment of the circuit court is reversed and the cause remanded, with directions to that court to enter a decree as prayed in the petition, retaining jurisdiction to make such modifications and such other, further, and additional orders, as may be necessary to render said decree effectual."

For the reasons given herein, we conclude that the judgment of the trial court should be and it is affirmed, with directions that the trial court change the periods of time within which the parties are to perform the acts decreed to be performed by them.

Whole Court sitting, except Judge Stites.